Argued September 10, affirmed November 14, 1962

## SOUTHERN PACIFIC COMPANY *v.* CAMPBELL McLEAN, INC.

376 P. 2d 77

*James H. Clarke,* Portland, argued the cause for appellant. With him on the briefs were Koerner, Young, McColloch & Dezendorf and Wayne Hilliard.

*John C. Beatty, Jr.,* Portland, argued the cause for respondent. On the brief were Dusenbery, Martin, Beatty & Parks and David P. Templeton, Portland, and Calkins & Bryson, Eugene.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Denecke, Justices.

DENECKE, J. (Pro tempore)

This is an action by the Southern Pacific Company (S.P.) against the operator of a plywood mill to recover damages to railroad equipment caused by fire. The S.P. alleged that the fire in the mill was started by the defendant's negligence and allowed to spread through defendant's negligence. A judgment of involuntary nonsuit was entered against the plaintiff. The sustaining of the motion for nonsuit was the only assignment of error.

The sole issue is whether or not there was evidence of negligence and, if so, was such negligence the cause of the fire? The appellant contends that there was evidence to support the charge that the plant operator installed a defective electrical system and failed to properly inspect and maintain such system.

The evidence was that the fire was first observed in the mill warehouse on a summer, Sunday evening. The warehouse was on one end of the plant. It was separated by a fire wall from the operating portion of the plant. Veneer and plywood were stacked in the warehouse.

Victor Lanini, who was working in the plant, first saw the fire. He smelled smoke, went to the warehouse, and saw the flames in the rafters overhead. He tried to put it out with a hose, but after a minute and a half or two minutes ran back into the plant for help. He found Max Groesbeck, who called the fire department. Groesbeck then joined Lanini and they both played hoses on the fire, but could not stop its spread. The first fire truck got there less than ten minutes after Groesbeck called. Nevertheless, the

entire plant was destroyed by the fire. Plaintiff's railroad cars, spotted on a spur at the mill, were damaged.

The first question is, was there any evidence of a defect in the electrical system?

The evidence about replacing the fuse box some months before the fire has no relevancy. There was evidence that a week before the fire a fuse had blown. It is not known whether this fuse serviced the light nearest the origin of the fire. It is not known why it blew or whether it was replaced.

There was circumstantial evidence that the circuit serving the light nearest the fire had been improperly fused. This is the inference that can be drawn from evidence that the circuit remained energized after it had shorted. Lanini testified he observed popping and snapping in the electrical circuit in the fire. This snapping and popping evidenced a short in a circuit remaining energized. If properly fused, the fuse would have blown when the short occurred and when the fuse blew the circuit would have been de-energized.

We believe there was evidence that the electrical system was defective in that it was improperly fused.

There still remains, however, the question whether there was any evidence that the defective electrical system caused the fire. Was defendant's negligence the physical cause, i.e., the cause-in-fact of the fire? The short circuit evidenced by the snapping and popping could as probably have been caused by the fire as to have been a cause of the fire. Fire burns insulation and brackets or other supports for the wires. This causes bare wires to come into contact with other good conductors of electricity or other energized wires causing short circuits.

If the fuse that blew one week earlier was for the

circuit servicing the light nearest the fire, it could as probably have blown for reasons other than a defect in the circuit of the type that would cause a fire as from a defect that would cause a fire. Short circuits are only one of several possible reasons for a fuse to blow. If the circuit had been improperly fused and a short circuit had occurred before the fire, the improper fusing could have permitted a buildup of heat which could cause a fire. However, there was no evidence of a short before the fire. Improper fusing would not directly, in and of itself, cause a fire.

Negatively, there were no other probable causes of the fire. The refuse burner had no fire in it. No work was going on in the warehouse. There was no evidence of anyone smoking. The fire started near an open door but there was no evidence of any activity outside that door.

On the basis of this negative and affirmative testimony we conclude there was not sufficient evidence for the jury to decide the question of causation if the standards of proof governing the usual negligence cases are here applicable. The S.P. contends that fire cases do not require the damaged party to meet the standards of proof applicable in other types of negligence cases. Plaintiff's argument could be stated,—more speculative inferences are permitted in fire cases. There is some precedent for such a contention.

Of the Oregon decisions cited by plaintiff on this point the most favorable for plaintiff is *Ehler et ux v. Portland Gas & Coke Co.*, 223 Or 28, 352 P2d 1102, 353 P2d 864. In that case there was evidence that the defendant was negligent in failing to securely cap a gas line underneath the plaintiff's house. Gas escaped therefrom. The plaintiff's house was burned by a

fire. The plaintiff contended that the fire was started by the ignition of escaped gas collected under the house. There was no evidence how the gas was ignited. The court found there was evidence that enough gas had collected so as to become inflammable. There was a flame in the sawdust furnace. There was a rumble or vibration at the outset of the fire. The fire started near the capped line. After the fire subsided there was a flame two or three feet high over the capped line. The fire was sudden in its outset and quick in its spread. No cause other than the ignition of escaped gas was probable. Upon this evidence the court held causation was a question of fact.

It seems to us that the basic distinction between that case and this one is escaping gas. If there is uncontained gas in an area and a fire commences, under conditions which can be now visualized, the jury could draw the inference that the uncontained gas somehow became ignited and caused the fire. Uncontained gas is regarded as an extreme fire hazard.

Electricity in properly insulated wires through proper connections does not connotate fire danger as does uncontained gas. If there was evidence of a bare energized wire, then we would have evidence of electricity likely to become uncontained and the facts would be more comparable to the *Ehler* case. Here, the only evidence of uncontained electricity was that after the fire had been discovered a short circuit existed. This short could as probably have been caused by the fire as to have been a cause of the fire.

Accepting the proposition stated by the *Ehler* case, supra at 42,—"the origin of a fire has been held sufficiently established by inferences drawn from slight circumstantial evidence"—we conclude the facts

here are not sufficient to create a reasonable inference that the fire was more probably caused by a defective electrical system than by some other cause.

The remaining question is was there sufficient evidence to submit to the jury the question of whether or not defendant negligently permitted the fire to escape and spread? S.P. relies upon the proposition that defendant's failure to have an overhead sprinkler system was sufficient to enable a jury to reasonably find the defendant negligent.

In Oregon with its hundreds of wood processing plants this is an important question. However, it is not necessary to answer it to decide this case. There is no evidence that if the defendant had an automatic sprinkler system, plaintiff's cars would not have been burned.

The State Deputy Fire Marshal testified:

"In the conclusion this sums up my opinion. Whether or not an automatic sprinkler system would have been capable of keeping ahead of the rapid spread and establishing control in this particular incident is a debatable question; however, in this writer's opinion such a system would have had a retarding effect on the rapid spread, and in so doing would have permitted responding outside assistance to initiate more effective defensive measures."

The Eugene Fire Marshal stated:

"I feel if we had had a proper sprinkler system in there and an adequate water supply the system would at least held the fire in check until the Fire Department could have come in and pumped into the system and supplemented the water supply."

Mr. Cook of the Oregon Insurance Rating Bureau was also called by the S.P. He first testified:

"There is a good possibility. I couldn't say for sure that any fire is—until after it actually hap-

pens when you would evaluate it. But there is a good possibility standard installation of sprinkler equipment would have had a mitigating effect upon the fire."

This was stricken. The order striking was not made the subject of an assignment of error. The witness was later asked:

"Can you tell us whether or not it would have probably been controlled or held in check—do you have an opinion as to whether it could have been controlled or held in check until outside assistance arriving within a period of approximately ten to fifteen minutes after the fire started was observed by this employee, arrived?

The witness, with commendable frankness, stated:

"I don't feel I would have an opinion, not having personally seen the property. I[t] would be purely conjecture on my part in a particular instance."

This cause and effect area is a difficult one to give testimony in "probabilities" rather than "possibilities." However, there are many other similarly difficult areas in which experts are able to give opinion evidence in terms of "probabilities." The most common is whether or not the effect of a personal injury will be permanent.

The most favorable interpretation that can be placed on the admissible testimony is that an overhead sprinkler system would have slowed the spread of the fire and this would have given the fire department a better chance of controlling the fire. This is not sufficient to permit a jury to decide that failure to have an overhead sprinkler system caused plaintiff's cars to be damaged.

The judgment is affirmed.